UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCUS CLAYBRON,

       Petitioner,

v.                                      CASE NO. 13-cv-11674
                                      HON. JOHN CORBETT O'MEARA

JOE BARRETT,

       Respondent.

_____/

**OPINION AND ORDER
DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY,
BUT GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

**I. Introduction**

Michigan prisoner Marcus Claybron ("Petitioner") has filed a *pro se* petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254. Following a bench trial in 2010, Petitioner was convicted of felonious assault, Mich. Comp. Laws § 750.82, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b. The convictions arose from an assault on Veloise Cook in Ypsilanti, Michigan on April 11, 2010. The evidence at trial established that Petitioner chased Ms. Cook with a firearm when he was ineligible to possess a firearm due to a prior felony conviction.

Petitioner was sentenced as a fourth habitual offender, Mich. Comp. Laws § 769.12, to two years in prison for the felony-firearm conviction, followed by concurrent terms of four years, ten months to fifteen years in prison for the felonious assault

conviction, and four to twenty years for the felon-in-possession conviction. Petitioner raises claims regarding the weight and sufficiency of the evidence and the prosecution's alleged suppression of evidence. For the reasons set forth below, the Court denies the habeas petition. The Court also denies a certificate of appealability, but grants leave to proceed *in forma pauperis* on appeal.

## II. Facts and Procedural History

Petitioner was charged in Washtenaw County, Michigan with six counts: (1) felon in possession of a firearm; (2) assault with intent to commit murder; (3) assault with intent to do great bodily harm less than murder; (4) assault with a dangerous weapon (felonious assault); (5) felony firearm; and (6) witness intimidation. Several witnesses, including Ms. Cook and Petitioner, testified at Petitioner's trial in Washtenaw County Circuit Court on November 29, 2010.

### A. Prosecutor Witnesses

#### 1. Veloise Cook

Ms. Cook testified that on the evening of April 11, 2010, she lived around the corner from the Forest Knoll apartment complex ("Forest Knoll"). She had known Petitioner for years because he dated one of her friends. Petitioner also was friends with Devaughn Thompson ("Thompson"), who was prosecuted earlier in 2010 for shooting Ms. Cook in 2009. Ms. Cook was a witness at Thompson's trial. After Thompson's trial, Petitioner called Ms. Cook a "snitch" and told her that he was going to finish what his friend did not do.

Petitioner continued to harass Ms. Cook. In one incident, he pulled a gun on Ms.

Cook in front of her girlfriend's daughter. In another incident, he broke Ms. Cook's apartment window. On the night in question, he broke her neighbor's apartment window and threatened to physically assault the neighbor. Seeking to avoid any further harassment from Petitioner, Ms. Cook left her residence and walked over to visit a friend at Forest Knoll, which has a gated entrance. On her way in, she passed the manned guard shack.

    At one point during her visit, Ms. Cook stepped outside her friend's apartment to take a phone call. While speaking on the phone, she strolled around the entrance area. Then one of her other friends, who was a resident at Forest Knoll, motioned with her hand for Ms. Cook to leave the premises. Not understanding the hand gesture, Ms. Cook walked back towards the guard shack. At that moment she saw Petitioner with five or six of his male friends standing about fifty feet away from her. Petitioner pulled out a black "five rounder" handgun, pointed it at her, and yelled "there goes that bitch Val", as he and his male friends began running towards her.

    Fearful of being shot again, Ms. Cook ended her phone call and immediately ran out of the apartment complex, eventually hiding behind a nearby garage. Petitioner and his friends stopped at the home, and one of the men needed to use the bathroom. Ms. Cook heard him approach the back of the garage where she was hiding. She jumped the fence and ran away.

    Ms. Cook further testified that, as she was jumping fences, she heard gunshots and saw fire coming out of Petitioner's gun. As she approached Forest Knoll, the guard at the entrance told her that she had already called the police. She stepped into the guard shack, but immediately left because she was afraid that Petitioner would come

back and shoot her. She went back to her friend's apartment, but did not contact the police about the incident until approximately two months later because she had a warrant from another legal matter.

### 2. Karrie McLain

Karrie McLain, the security guard at Forest Knoll, testified that she saw the victim run out of the apartment complex and around the corner as two men chased her. Petitioner stopped directly in front of Ms. McLain, threw his hands up in the air, and brandished a small, dark-colored handgun in his right hand. Petitioner then threatened Ms. McLain, saying, "Do you want some of this bitch?" Ms. McLain testified that she was familiar with guns and that she was sure Petitioner had a handgun.

Ms. McLain further testified that there were seven cameras near the guard shack, but only the camera near the front could have possibly captured the incident. She reviewed two hours of the videotape that night with another security guard, but the incident was not captured because the "camera was panning" away from where the action occurred. She testified that the entire incident took about "five to ten minutes" and that she notified the police that the incident was not captured on the videotape.

### 3. Matthew Kessler

Police officer Matthew Kessler testified that he responded to a dispatch about a fight at Forest Knoll. Upon arriving at the entrance, he spoke to Ms. McLain, who informed him that a man named Marcus Claybron had a gun and was chasing a black female by the name of Val. Ms. McLain also told him that "Val" might be at Michelle Styles' apartment. Officer Kessler spoke with Ms. Styles, who told him that Veloise Cook had stopped by earlier, but that she was no longer there. Officer Kessler testified

that he was familiar with Petitioner because he had knowledge of his prior felony conviction and an outstanding warrant for his arrest. He searched for Petitioner in the area, but was unsuccessful in locating him. Officer Kessler claimed that he did not collect any surveillance videotape from Forest Knoll because the incident was not recorded on the system.

### B. Defense Witnesses.

#### 1. Michelle Styles

Michelle Styles and Quineshia Malone both testified on behalf of Petitioner. Ms. Styles testified that she had been friends with both Petitioner and Ms. Cook, but was no longer friends with Ms. Cook. Ms. Styles admitted that she was probably intoxicated when the event in question took place, and she believed that Ms. Cook also had been drinking.

Continuing, Ms. Styles testified that she heard a commotion from inside of her house on the night in question, and upon stepping outside, she saw Ms. Cook going away from the guard shack. She did not see Petitioner at the guard shack. Nor did she see him brandish a handgun. And she told the responding officer that she did not know what happened between Petitioner and Ms. Cook.

#### 2. Quineshia Malone

Ms. Malone testified that she saw Ms. Cook at Ms. Styles' home before the incident. According to Ms. Malone, Ms. Cook was drunk and "acting crazy." Ms. Malone testified that, later on while she was standing outside with Petitioner and several others, Ms. Cook threw "a liquor bottle or something" at Petitioner and then ran. She

witnessed Petitioner chase Ms. Cook and claimed that Petitioner never left the gate. When he came back, everyone laughed because Ms. Cook had run faster than him.

Ms. Malone further testified that she did not see a gun in Petitioner's possession. And she admitted that, although she was inside of Ms. Styles' home when Officer Kessler interviewed Ms. Styles, she never discussed what she observed that night with him or with any other officer. She spoke to Petitioner's attorney about one month later on the phone, and even though she and Ms. Styles rode to trial together, they did not discuss the case.

### 3. Marcus Claybron

Petitioner testified that he dated Ms. Cook's friend in 2006 and that his interaction with Ms. Cook was positive until March 2010, when they got into a small argument about money that he owed Ms. Styles. In another incident Petitioner and Ms. Cook exchanged heated words, while they were standing across the street from one another. Petitioner further testified that he did not personally know Devaughn Thompson, and that it was actually one of his friends that broke Ms. Cook's window.
Petitioner further testified that on the night in question, he was at Forest Knoll and overheard Ms. Cook telling Ms. Styles that he broke her neighbor's window. He and Ms. Cook began arguing and then all of a sudden Ms. Cook threw a glass beer bottle at him and ran away. He chased her towards the guard shack out of anger, and at that point he threw his beer bottle at her, but he never left the complex. He testified that Ms. McLain came out of her guard shack and that they had an exchange of words.

Petitioner denied having a gun on the night in question. He explained that Ms. Styles had sent him a letter while he was in jail, telling him that she did not agree with

what the police report said about the incident, and that he subsequently gave Ms. Styles his attorney's contact information.

### C. The Trial Court's Rulings, the Sentence, and Direct Appeal

The trial court granted Petitioner's motion for a directed verdict of acquittal on the sixth count (witness intimidation), and, at the close of trial, the trial court acquitted Petitioner of assault with intent to commit murder and assault with intent to do great bodily harm less than murder. The court found Petitioner guilty of felonious assault, felon in possession of a firearm, and felony firearm. The court determined that Ms. Styles' and Ms. Malone's testimonies were biased because of their relationship with Petitioner. The court found Ms. McLain's testimony to be credible because she had the least amount of bias toward either side in the matter. The court determined that Ms. Cook's testimony was corroborated to some extent by Ms. McLain's testimony.

On December 15, 2010, the trial court sentenced Petitioner to two years in prison for the felony firearm conviction, followed by concurrent terms of four to twenty years in prison for the felon-in-possession conviction and four years, ten months to fifteen years for the felonious assault conviction. Following his sentencing, Petitioner, through counsel, filed an appeal of right with the Michigan Court of Appeals. On May 10, 2012, the Court of Appeals affirmed his convictions in an unpublished decision. *See People v. Claybron*, No. 303805, 2012 WL 1649749 (Mich. Ct. App. May 10, 2012). On September 4, 2012, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Claybron,* 819 N.W.2d 903 (Mich. 2012) (table decision).

### D. The Habeas Petition and Answer to the Petition

On April 12, 2013, Petitioner filed his federal habeas petition, asserting that: (1) there was insufficient evidence at trial to support his convictions; (2) the verdict was against the great weight of the evidence; and (3) he was denied his right to due process and a fair trial by the prosecution's failure to preserve and disclose evidence favorable to the defense.

Respondent Joe Barrett argues in an answer to the petition that: (1) the state appellate court's conclusion regarding the sufficiency-of-the-evidence claim was not an unreasonable application of clearly established Supreme Court law; (2) Petitioner's great-weight-of-the evidence claim is a non-cognizable issue of state law; and (3) the state appellate court reasonably concluded that there was no basis for relief regarding Petitioner's claim about the prosecutor. Respondent also argues that Petitioner's claim about the prosecutor's alleged failure to preserve evidence is not exhausted, because Petitioner raised this claim in state court as a failure to turn over evidence.

Although state prisoners ordinarily must exhaust state remedies before raising his claims in federal court, 28 U.S.C. §2254(b)(1), the exhaustion rule is not a jurisdictional requirement. *Castille v. Peoples*, 489 U.S. 346, 349 (1989). Furthermore, Petitioner's unexhausted claim lacks merit, and a federal court may deny a habeas petition on the merits despite the petitioner's failure to exhaust available state remedies. 28 U.S.C. §2254(b)(2). Accordingly, the Court excuses the alleged failure to exhaust state remedies and proceeds to the merits of Petitioner's claims.

### III. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified in part at 28 U.S.C. § 2254, provides the standard of review for federal habeas corpus

cases brought by state prisoners. AEDPA's deferential standard provides that:

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

"A state court's decision is 'contrary to'…clearly established law if it 'applies a rule, that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (*per curiam*) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of §2254(d) (1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams,* 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent is 'unreasonable' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.' " *Wiggins*, 539 U.S. at 520-21

9

(internal and end citations omitted). "AEDPA thus imposes a 'highly deferential standard of evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).

The Supreme Court has held that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurist could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of [the Supreme] Court." *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's ruling on his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)

10

(noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state to decline to apply a legal rule that has not been squarely established by this Court") (citations omitted). Section "2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.' " *Richter*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court'] cases-indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (emphasis in original). While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. §2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-361 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

**IV.  Analysis**

    **A. Sufficiency of the Evidence**

Petitioner claims that he should have been acquitted because there was

insufficient evidence that he possessed a weapon or firearm, which is an element of all three of the crimes for which he was convicted. Petitioner argues that (1) there was no physical evidence of a firearm, (2) Ms. McLain's testimony that she was ninety-percent certain he possessed a handgun is insufficient to establish proof beyond a reasonable doubt, and (3) Ms. Cook was not a credible witness because she said whatever came to mind and because she was impeached with her prior testimony more than once.

The Michigan Court of Appeals found no merit in Petitioner's claim because two witnesses saw Petitioner carrying a gun during his pursuit of Ms. Cook. The Court of Appeals stated that the small variations in their testimonies were insufficient to render their testimonies incredible and that the trial court was within its authority to deem the defense witnesses biased.

### 1. Clearly Established Federal Law

The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (internal citation and footnote omitted) (emphases in original).

"Two layers of deference apply to the habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Koneth*, 567 F.3d 191, 204-05 (6th Cir. 2009)). First, the Court "must determine whether, viewing

the trial testimony and exhibits in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205 (citing *Jackson*, 443 U.S. at 319) (emphasis in original). Second, even if the Court were "to conclude that a rational trier of fact *could not* have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Id.* (emphases in original).

### 2. Application

Both Ms. Cook and Ms. McLain testified that Petitioner had a gun at Forest Knoll on the night in question. See Trial Tr., 37-38, 46, Nov. 29, 2010 (Ms. McLain's testimony); *id.* at 69, 71-72, 96-98, 125-26 (Ms. Cook's testimony). And even though Ms. McLain testified at the preliminary examination that she was only ninety percent sure that Petitioner had a gun in his hand, *id.* at 47, 50, she testified at trial that she was sure Petitioner had a gun on the night in question, and she denied being influenced by Ms. Cook. *Id.* at 47-48. Petitioner maintains that Ms. McLain and Ms. Cook were not credible witnesses, but

> [a] reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court. *Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992).

*Matthews v. Abramajtys,* 319 F.3d 780, 788 (6th Cir. 2003); *see also Dillard v. Prelesnick*, 156 F. Supp. 2d 798, 805 (E.D. Mich. 2001) (stating that "[d]etermination of the credibility of a witness is within the sole province of the finder of fact and is not

13

subject to review").

A rational trier of fact could have concluded from the evidence taken in the light most favorable to the prosecution that Petitioner possessed a handgun during the incident at Forest Knoll. Furthermore, the state appellate court's determination that Petitioner's sufficiency-of-the-evidence claim lacked merit was objectively reasonable. Therefore, habeas relief is not warranted on Petitioner's sufficiency-of-the-evidence claim.

### B. The Great Weight of the Evidence

Petitioner alleges next that the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. Petitioner adopts the same arguments that he raised in his sufficiency-of-the-evidence claim.

The Michigan Court of Appeals found no merit in Petitioner's claim. Petitioner nevertheless contends that, if this Court does not find his argument regarding the sufficiency of the evidence persuasive, the Court should find that his arguments support the lesser standard of "against the great weight of the evidence."

The contention that the verdict was against the great weight of the evidence is a state-law argument, and a federal habeas court may only review issues of federal law. *Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir. 2007). The only "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). And, as discussed in the previous section, Petitioner's sufficiency-of-the-evidence argument is without merit. Thus, Petitioner's weight-of-the-evidence argument is not a basis for habeas

14

corpus relief.

### C. Denial of a Discovery Motion; Failure to Preserve and Disclose Evidence

Petitioner's third and final claim alleges that the trial court and prosecution deprived him of due process in connection with evidence that was favorable to him. The disputed evidence was a surveillance videotape of the apartment complex where the crimes occurred.

#### 1. Denial of the Discovery Motion

Petitioner first contends that the trial court deprived him of due process and a fair trial when it denied his pretrial discovery motion for the videotape of the incident in question. The trial court denied Petitioner's motion because the prosecutor stated at a hearing on Petitioner's motion that he did not believe there was a videotape from the apartment complex and that he did not possess the videotape. After he offered to look into the matter, the trial court stated that, if the video footage existed, the prosecutor would be required to provide the evidence to Petitioner. (Tr. Mot. Hr'g, 15-18, Nov. 3, 2010.)

The Michigan Court of Appeals discerned no due process violation in the trial court's denial of Petitioner's discovery request. This Court finds no merit in Petitioner's claim because "[t]here is no general constitutional right to discovery in a criminal case." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). "Rather, all the Constitution requires, per the due process clause, is that the defendant not be deprived of a fundamentally fair trial." *Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002) (citing *United States v. Presser*, 844 F.2d 1275 (6th Cir. 1988)). Because the Constitution does not require pre-trial disclosure of any impeachment evidence related to the defendant's case, there

15

is no cognizable constitutional violation here.  *Id.*

### 2. Failure to Disclose Information Favorable to the Defense

Petitioner alleges next that the prosecution deprived him of due process by failing to disclose the surveillance videotape taken at Forest Knoll.  Petitioner contends that the tape would have exonerated him and shown that the events in question did not happen as Ms. McLain and Ms. Cook claimed they did.  The Michigan Court of Appeals disagreed and concluded that neither the prosecution, nor the police, suppressed any evidence favorable to Petitioner.

The Supreme Court has held that "suppression by the prosecution of evidence favorable to an accused upon request, violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  "*Brady . . .* applies to relevant evidence in the hands of the police, whether the prosecutors knew about it or not, whether they suppressed it intentionally or not, and whether the accused asked for it or not." *Harris v. Lafler*, 553 F.3d 1028, 1033 (6th Cir. 2009) (internal and end citations omitted).  There are three components to a true *Brady* claim:  "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

As previously explained, the prosecutor stated at the pretrial hearing on Petitioner's motion for discovery that he did not have a videotape from Forest Knoll and that he did not think there was a videotape from the apartment complex.  Furthermore,

Officer Kessler testified at trial that he did not collect the videotape because the incident was not recorded. (Trial Tr., 132-33, Nov. 29, 2010.) And Ms. McLain testified that, after she and another security guard reviewed two hours of the videotape, she determined that the camera was panning in the other direction and did not capture the incident. She also testified that she believed she informed the investigating officer that there was no video footage. (*Id.* at 43, 54-58.)

It is clear from Officer Kessler's and Ms. McLain's testimonies, as well as the prosecutor's comments at the pretrial motion hearing, that neither the prosecution, nor the police, possessed any video footage from Forest Knoll. Furthermore, Petitioner has not demonstrated that the surveillance tape would have been favorable to the defense or that the lack of the tape prejudiced him. The videotape apparently did not capture the incident in question, and even if it did, there is a possibility that the tape would have incriminated Petitioner rather than exonerated him.

The Court concludes that Petitioner has not stated a true *Brady* claim. He has not shown that the prosecution or the police possessed the videotape and suppressed it, that the tape was exculpatory, or that he was prejudiced as a result of not having the tape.

### 3. Failure to Preserve Evidence

The remaining question is whether Petitioner was deprived of due process by the prosecution's or police officers' failure to preserve the surveillance videotape. Although *Brady* makes the good or bad faith of the State irrelevant when the State fails to disclose material exculpatory evidence to the defendant, the Due Process Clause requires a different result when all that can be said is that the evidence might have

17

exonerated the defendant. *Arizona v. Youngblood,* 488 U.S. 51, 57 (1988). The failure to preserve potentially useful evidence does not constitute a denial of due process unless a criminal defendant can show bad faith on the part of the police. *Id.* at 58. Additionally, the evidence must "possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489 (1984); *accord Monzo v. Edwards*, 281 F.3d 568, 580 (6th Cir. 2002); *United States v. Wright*, 260 F.3d 568, 570-71 (6th Cir. 2001).

Petitioner has failed to show that the videotape in question had any exculpatory value. Petitioner also has not shown that the police or the prosecution acted in bad faith by failing to preserve the surveillance videotape. As noted above, Officer Kessler testified that he did not collect the videotape because the incident was not recorded. This testimony was corroborated by Ms. McLain, who testified that she and another security guard reviewed two hours of the videotape and determined that it did not capture the incident. Ms. McLain also testified that she thought she had informed the investigating officer that there was no video footage.

Petitioner has failed to establish a due process violation, and the state appellate court's rejection of his claim was neither contrary to, nor an unreasonable application of, *Youngblood* or *Trombetta*. Habeas relief therefore is not warranted on Petitioner's claim about the alleged failure to preserve evidence.

## V. Conclusion

For the reasons stated above, the state appellate court's adjudication of Petitioner's claims on the merits was not contrary to Supreme Court precedent, an

18

unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. The state court's decision also was not "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Accordingly the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

## VI. Denying a Certificate of Appealability; Granting Leave to Appeal *In Forma Pauperis*

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. 28 U.S.C § 2253(c)(1)(a); Fed. R. App. P. 22(b)(1). When denying relief, the district court must issue or deny a certificate of appealability. Rule 11(a) of the Rules Governing 2254 Cases, 28 U.S.C. foll. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C §2253(c)(2). When a court denies a habeas claim on the merits, the petitioner must demonstrate that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong, *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), and the issues presented must be adequate to deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the claim's underlying merit. *Id.* at 336-37. Having conducted the requisite review, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right. The Court therefore declines to issue a certificate of appealability. Petitioner nevertheless may proceed *in forma pauperis* on appeal if he appeals this Court's decision because an

appeal could be taken in good faith.  28 U.S.C. § 1915(a)(3).

s/John Corbett O'Meara
United States District Judge

Date:  May 1, 2015

    I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, May 1, 2015, using the ECF system and/or ordinary mail.

S/William Barkholz
Case Manager